[Civ. No. 6239. Fifth Dist. May 27, 1982.]

GARY G. FOWLER, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, and Scott D. Rasmussen, Deputy Attorney General, for Defendant and Appellant.

Carsel & Umhofer, Richard A. Carsel, Donley & McKenzie and William H. McKenzie for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.**—

STATEMENT OF THE CASE

On May 14, 1981, Superior Court Judge Richard C. Kirkpatrick issued a judgment and a peremptory writ of mandate commanding the State Personnel Board (hereinafter the appellant or the board) to set aside its decision dated May 27, 1980, denying compensation to respondent, a traffic officer with the California Highway Patrol (hereinafter CHP) for the one-half hour lunch period of each working shift.

Respondent had filed a grievance with the CHP concerning compensation for lunch hours. He contended he worked during his half-hour lunch period each working day because he was (1) required to wear a distinctive uniform, (2) prevented from doing personal business outside a specified assigned geographical location, (3) required to be on call, and (4) being a bachelor, he took his lunch periods in restaurants and he was constantly interrupted by the public seeking information or assistance.

Respondent's appeal to the board from the CHP's denial of his grievance was denied with the comment that the issue and supporting authorities raised in respondent's current grievance were the same as those raised and considered by the board in August of 1978.[1] Respondent was instructed that no further appeal was possible within the state grievance process, and that the letter denying his appeal constituted an exhaustion of his administrative remedies and any further review would have to be through the courts.

On July 17, 1980, respondent again filed a petition for writ of mandate on the lunchtime compensation issue. The writ was granted, and the state is appealing from that judgment.

---

[1] In 1978 respondent filed an earlier grievance against his employer, the CHP, on the issue of lunchtime compensation. Respondent sought backpay for lunch breaks worked since May 23, 1966, and a future work schedule of eight hours per day including a paid one-half hour lunch period. The board denied respondent's 1978 grievance because, although wearing the CHP uniform during respondent's lunch subjected him to questions and requests for information, these impositions were not caused by CHP restrictions proscribing the use of lunchtime for personal business or pleasure but were simply a consequence of wearing the uniform as a condition of employment. When respondent accepted employment with the CHP, he also agreed to wear the uniform required and thus impliedly agreed to perform all duties that resulted from such wearing.

Although respondent filed a petition for writ of mandate on February 16, 1979, to contest the board's decision, the petition was voluntarily dismissed by respondent.

## The Evidence

Judge Kirkpatrick made the following findings of fact concerning the compensation received by respondent and the restrictions placed upon his lunch period:

"8. Petitioner is paid for working 40 hours per week, eight hours per day. However, petitioner is required by the Department to report each work day for an eight and one-half hour shift. The Department designates one-half hour of said shift as a lunch period but excludes such period from the calculation of the number of hours in petitioner's workday and work week. (CHP Manual, Sec. 23.1.)

"9. Petitioner is restricted by the Department with respect to the one-half hour lunch period in the following ways:

"(a) Petitioner is required to be in uniform during the entire period. (CHP Manual, Sec. 73.5, Chapter 1.)

"(b) Petitioner is required to wear his gun.

"(c) Petitioner is required when travelling to do so conspicuously on public streets and when served in a restaurant to be served in portions of said restaurant in which the general public is served (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7).

"(d) Petitioner is required to take his lunch period at times designated by his supervisor (CHP Manual 10.3, Sec. 23.1 and General Order 6.2, Sec. 2) or agreed to with fellow officers on the same beat who may not take their lunch period at the same time. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7.)

"(e) Petitioner is required to render assistance to members of the public in the following ways:

"(1) Petitioner is subject to being called out by his dispatcher at any time during the lunch period (CHP Manual 73.5, Sections 1.1.3, 1.1.4).

"(2) Petitioner may not eat at his residence unless his beat assignment adjoins the community in which he resides. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7.)

"(3) Petitioner may not take his lunch at a restaurant that is more than five minutes in response time to his beat assignment. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7.)

"(f) Petitioner may not eat his lunch in restaurants which have eating areas combined with bars or cocktail lounges.

"10. The result of these restrictions is that:

"(a) By being required to be in uniform petitioner is continually subjected to questions and requests by members of the public in public places.

"(b) By being required to carry his gun, petitioner is made to appear that he is on duty and enhances the problem described above.

"(c) By being required to travel conspicuously about in his patrol car and to eat in the public portion of restaurants, petitioner is subjected to the aforesaid inquiries and interruptions of the public.

"(d) By being subject to being told when he can take his lunch periods, petitioner is unable to schedule in advance any personal business and thus cannot make and keep appointments.

"(e) By being made subject to being called out, the choice of eating places is severely limited. The effect of the various regulations is to require petitioner to be available by radio or telephone at all times. Accordingly, he cannot shop or exercise or conduct personal business. He must eat either in his car, at the station, at another law enforcement station or at a restaurant. The geographical operation of the California Highway Patrol sometimes dictates he work at a great distance from his home so he cannot depend on that as a place to eat. Additionally, being called out to assist the public interrupts his meal period from time to time and despite being permitted to take an additional period for lunch later, it only means that he must buy two meals some days.

"(f) The limitation of kinds of acceptable restaurants within areas of petitioner's assigned beat creates a de facto list of restaurants at which he must eat if he chooses to eat in a restaurant. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.8.)"

The appellant disputed some of the findings of fact as follows:

9(c) and 10(c). (Respondent required to travel conspicuously and be served in public portions of restaurants.) The appellant points out that respondent has other options for eating during his lunch period including brown bagging at the local area office or in his car.

9(e). (Respondent required to render assistance to members of the public.) The appellant points out that when respondent is required to render assistance to the public during a lunch period, he is on duty and entitled to overtime compensation.

Respondent does not contest appellant's qualification of findings 9(c), 9(e) and 10(c).

Two other points relating to the findings of fact must be clarified. First, while the finding of fact 9(f) indicates that appellant is *precluded* from eating his lunch in restaurants having adjoining bars or cocktail lounges, the actual regulation provides that "When possible [an officer should] not frequent establishments that have eating areas combined with cocktail bars or lounges." Second, appellant cites the declaration of CHP Lieutenant M. John Grzincic, field operations officer for the San Luis Obispo area, in which he states that although officers are subject to being called out from lunch, these "callouts" are infrequent, occurring only when an emergency arises and no other unit is available to handle an incident that requires immediate attention. Since being assigned to the San Luis Obispo area, Officer Grzincic was personally aware of only 4 callouts for lunch, and during his 19.5 years of experience he had not been called out more than a dozen times.

Respondent, however, declared that he had been on road patrol duty for 14 years. His callouts from lunch have been as frequent as twice a month. It is not disputed that when an officer is unable to take a lunch period at a later time he may either elect payment or compensating time off.

The trial court ruled that: (1) by virtue of the restrictions placed upon respondent concerning the use and timing of the one-half hour afforded for lunch, respondent was working during this period; (2) CHP manual 10.3, section 23.1, excluding such period from compensated work time, was contrary to law; and (3) petitioner worked 42 1/2 hours, an amount of time in excess of that prescribed by Government Code section 18020, State Personnel Board rules 130.5 and 132 and CHP manual 10.3, section 24.3.46, without compensation.

The board was ordered to grant respondent's grievance and henceforth compensate respondent for the one-half hour lunch period for each working shift.

## DISCUSSION

■ The question presented by this appeal is whether CHP manual section 23.1 which precludes compensation for "time granted for lunch" is a valid rule. We hold that it is.

The lunchtime noncompensation rule accords perfectly with the legislative policy expressed in Government Code section 19844 which directs the department to provide compensation only for "ordered overtime" or overtime "in times of critical emergency."[2] Since it is undisputed that respondent is compensated whenever he is called back to duty during his lunch period, his normal lunchtime cannot otherwise be deemed "ordered overtime" or a time of "critical emergency" as provided by section 19844.

CHP manual section 23.1 does not so restrict the use of lunchtime for personal business or pleasure that it must be considered as time worked. Respondent during his lunch period is free with certain restrictions to eat in the restaurant of his choice, in his car, or at the station. Work credit is provided during the time he responds to a callout, but not otherwise. (39 Ops.Cal.Atty.Gen. 261, 264-265 (1962).) Merely being "on call" does not mean that the officer is working. (35 Ops.Cal.Atty. Gen. 239, 241-242 (1960).) Nor does wearing a uniform as a condition of employment mean that the officer is on duty. When respondent accepted employment with the CHP, he agreed to wear the uniform required and implicitly agreed to perform all duties that resulted from wearing the uniform.

*Los Angeles Fire & Police Protective League* v. *City of Los Angeles* (1972) 23 Cal.App.3d 67 [99 Cal.Rptr. 908] supports our holding. There, a police employee organization brought a class action against the

---

[2]Government Code section 19844, subdivision (a) provides, "The department shall provide the extent to which, and establish the method by which, *ordered overtime or overtime in times of critical emergency* is compensated. The department may provide for cash compensation at a rate not to exceed one and a half times the regular rate of pay, and the rate may vary within a class depending upon the conditions of work, or the department may provide for compensating time off at a rate not to exceed one and a half hours of time off for each hour of overtime worked. The provisions made under this section shall be based on the practices of private industry and other public employment, the needs of state service, and internal relationships." (Italics added.)

City of Los Angeles seeking to determine the rights of city police officers to compensatory pay, including overtime for their 45-minute meal period, during which they were not free to follow private pursuits but were subject to numerous obligations and restrictions for the benefit of the city, including being called out by their supervisors at a moment's notice in cases of emergency. The city code provided for an eight-hour workday, but with the meal period and a routine overlapping forty-five minute period between shifts, used for briefing purposes. The total daily shift for most officers amounted to eight hours forty-five minutes. The city code also defined "overtime" as hours worked in excess of eight hours per day.

The appellate court concluded that the officers were working during their 45-minute lunch period. The court relied on two Supreme Court cases holding that policemen were entitled to workers' compensation while coming to or returning from work, where they were required to wear a uniform, carry a gun, travel conspicuously on city streets and render assistance to members of the public. (*Id.*, at p. 76; see *Guest v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 670 [87 Cal.Rptr. 193, 470 P.2d 1]; *Garzoli v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502 [86 Cal.Rptr. 1, 467 P.2d 833].) The court also relied on two cases interpreting the Fair Labor Standards Act (*Glen L. Martin Nebraska Co. v. Culkin* (8th Cir. 1952) 197 F.2d 981; *Lindell v. General Electric Co.* (1954) 44 Wn.2d 386 [267 P.2d 709]).

Nevertheless, the court held that the officers were not entitled to compensation for their 45-minute lunch period because, whatever rights they had to overtime pay had they been in private employment, their rights were limited to those given to them by the city ordinance. This ordinance provided that, except as otherwise provided, all hours worked by policemen in excess of an eight-hour day shall be considered overtime. Overtime was expressly limited to those purposes, the need for which could not be anticipated or scheduled in advance, and unusual major events, the occurrence of which is not subject to the control of the police department. It was clear that meal time periods were not unusual major events nor were they something that could not be anticipated or scheduled in advance. Since employees of a chartered city are only entitled to compensation provided by ordinance, the 45-minute lunch period did not fall into a category of overtime that was compensable. (*Los Angeles Fire & Police Protective League v. City of Los Angeles, supra*, 23 Cal.App.3d at pp. 77-78.)

The court also noted that although the city may be unjustly and inequitably obtaining free work from the officers, it was for the Legislature to remedy the situation. The court was not free to read into a statute an interpretation that was strained or contrived. (*Id.*, at p. 78.)

Just as in *Los Angeles Fire & Police Protective League* v. *City of Los Angeles*, the statute governing overtime compensation in the present case (Gov. Code, § 19844) restricts overtime compensation to limited situations, i.e., "ordered overtime" or "overtime in times of critical emergency." As we have explained, lunchtime in the normal situation does not qualify under the statute.

■ While the ultimate interpretation of the meaning of a statute is for the courts (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]), when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great weight by the courts and will be followed unless clearly erroneous. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564].)

■ The trial court erred in holding that section 23.1 of the CHP manual was contrary to the statutory scheme for overtime compensation of CHP officers. It therefore becomes unnecessary for us to discuss appellant's other contentions concerning the statute of limitations, the alleged violation of the separation of powers clause of the California Constitution and the effect of the enactment of the State Employer-Employee Relations Act (SEERA) which became operative July 1, 1978.

The judgment is reversed.

Andreen, J., and Gomes, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.