[Civ. No. 25471. Third Dist. Sept. 9, 1986.]

CALIFORNIA ASSOCIATION OF HIGHWAY PATROLMEN,
Plaintiff and Appellant, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION,
Defendant and Respondent;
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL,
Real Party in Interest and Respondent.

354

## COUNSEL

Richard J. Romanski, Glenn A. Friedman, Hession, Creedon, Hamlin, Kelly, Hanson & Brown and Hession & Creedon for Plaintiff and Appellant.

Talmadge R. Jones, Christine A. Bologna and Edmund K. Brehl for Defendant and Respondent and Real Party in Interest and Respondent.

## OPINION

**SIMS, J.**—Plaintiff California Association of Highway Patrolmen (CAHP) appeals from a judgment[1] sustaining a demurrer without leave to amend and denying a writ of mandate. ■ ■■■ CAHP sought to compel respondent, California Department of Personnel Administration (Department), to set aside its decision denying overtime compensation to officers employed by the California Highway Patrol (CHP) for the one-half hour lunch period of each working shift.[2] We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

■ ■■■ In *Fowler* v. *State Personnel Bd.* (1982) 134 Cal.App.3d 964 [185 Cal.Rptr. 292], the Court of Appeal held that a CHP officer was not entitled to overtime compensation for his lunch period, even though he was subject to numerous restrictions on his freedom during his lunch period. (Pp. 968, 970.)

On July 1, 1984, pursuant to the State Employer-Employee Relations Act (Gov. Code, §§ 3512-3524, hereafter SEERA; all further nondescript stat-

---

[1]The appeal in this case was prematurely filed on September 5, 1985, prior to the entry of judgment on September 20, 1985. We will therefore deem the appeal to have been taken from the judgment. (Rule 2(c), Cal. Rules of Court.)

[2]The complaint expressly seeks compensation for overtime. In its briefs on appeal, CAHP has occasionally mentioned it seeks "compensation" for its officers' lunch periods. However, its legal arguments have focused exclusively on entitlement to overtime. In the absence of cogent legal argument, CAHP has waived any claim in this court to compensation other than overtime. (*Utz* v. *Aureguy* (1952) 109 Cal.App.2d 803, 807 [241 P.2d 639].) Thus, for example, we will not investigate on our own motion whether CAHP officers may be "on call" during their lunch periods within the meaning of paragraph 22 of the applicable memorandum of understanding.

[3]Our statement of facts follows the rule that a general demurrer admits the truthfulness of the properly pleaded allegations of the complaint. (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 804 [205 Cal.Rptr. 842, 685 P.2d 1193].)

utory references are to the Government Code), CAHP and the State of California entered into a written memorandum of understanding (MOU). The MOU, which was attached as an exhibit to and incorporated by reference in plaintiff's complaint, "has as its purpose the promotion of harmonious labor relations between the State and CAHP; establishment of an equitable and peaceful procedure for the resolution of differences; and the establishment of rates of pay, hours of work, and other conditions of employment including health and safety." We shall discuss pertinent provisions of the MOU later.

On July 9, 1984, shortly after execution of the MOU, the California Supreme Court decided *Madera Police Officers Assn.* v. *City of Madera* (1984) 36 Cal.3d 403 [204 Cal.Rptr. 422, 682 P.2d 1087]. In *Madera,* the Supreme Court held that rules and regulations of the City of Madera mandated that overtime be paid to police officers for their mealtimes because of numerous restrictions on the officers' freedom during these times. (P. 413.)

In December 1984, in accordance with grievance procedures set forth in the MOU, CAHP filed a grievance with the Commissioner of the Highway Patrol. The grievance alleged that the Supreme Court's decision in *Madera* entitled CHP officers to be paid overtime for their lunch periods. The grievance also asserted overtime was required by the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq., hereafter FLSA or Act).

The Commissioner of the Highway Patrol denied the grievance and CAHP appealed to the Department as required by the grievance procedure set forth in the MOU. On February 4, 1985, the Department denied the grievance.

When the grievance was denied by the Department, *National League of Cities* v. *Usery* (1976) 426 U.S. 833 [49 L.Ed.2d 245, 96 S.Ct. 2465] held the overtime provisions of the FLSA could not be enforced against the states in areas of traditional governmental functions. However, some two weeks after the Department denied CAHP's grievance, the United States Supreme Court overruled *Usery* in *Garcia* v. *San Antonio Metro.* (1985) 469 U.S. 528 at page 531 [83 L.Ed.2d 1016 at page 1021, 105 S.Ct. 1005].

On May 2, 1985, CAHP filed a petition for writ of mandate—discussed more fully below—seeking an order directing the Department to set aside its denial of the grievance, to provide retroactive and prospective overtime compensation for CHP officers during their lunch periods, and to make the CHP discontinue its requirement that officers work during the lunch periods without compensation.

Following the trial court's sustaining of Department's demurrer without leave to amend, CAHP appeals.

Discussion

I

*In the absence of arguments by the parties, the court will overlook possible procedural problems in CAHP's petition for writ of mandate and decide the case on the merits.*

At the outset a few words need be said about the procedural chaos manifest in the instant appeal.

For starters, it is unclear whether CAHP had a right to file any action in the superior court based on the *Madera* decision. As we shall explain, except for its FLSA claim, CAHP derives whatever rights it has in this action from the MOU. If CAHP has a cognizable claim under state law, it is that its officers are not receiving overtime compensation as provided in the MOU. The MOU was negotiated under, and is subject to, SEERA.

Arguably, the refusal of the state to honor the MOU is an unfair practice under SEERA. Section 3514.5 provides in pertinent part: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the [Public Employment Relations Board (PERB)]." Section 3514.5 further provides procedures for resolution of unfair practice complaints. Section 3520 then provides for the exclusive review of PERB orders, including those related to unfair practices, by way of writ in the district court of appeal.

Neither party has addressed the question whether the alleged refusal of the state to honor the MOU is an unfair practice subject to the foregoing procedures. We will not undertake that task on our own motion. We shall not reach the question whether the unfair practice procedures of SEERA apply to this dispute. For present purposes, we shall assume SEERA's procedures are inapplicable, so that CAHP's complaint was properly filed in superior court.

CAHP's superior court complaint presents more problems. The petition is pled as one seeking a writ of administrative mandate pursuant to the provisions of Code of Civil Procedure section 1094.5. Thus, the petition alleges the Department's decision is not supported by the evidence and the

Department acted in an arbitrary and capricious manner in denying the grievance.

However, it appears administrative mandate under Code of Civil Procedure section 1094.5 may not be available. ■ That statute applies "Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a *hearing is required* to be given . . . ." Where no hearing is required, administrative mandamus is unavailable. (*Keeler* v. *Superior Court* (1956) 46 Cal.2d 596, 599 [297 P.2d 967]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 246, p. 870.)

■ In the instant case, it is undisputed the Department conducted no hearing on the CAHP's grievance, the resolution of which took place under procedures specified in the MOU. The MOU does not require a hearing. We have been cited no statute or regulation requiring a hearing in these circumstances. Nor has either party suggested a hearing is required by constitutional principles of due process of law. In the absence of any authority by either party suggesting the Department was required by law to hold a hearing on the grievance, we shall assume no hearing was required by law and administrative mandamus does not lie. (*Keeler* v. *Superior Court, supra,* 46 Cal.2d at p. 599.)

The lack of a hearing may help to explain an apparent lacuna in the administrative record which, in ordinary circumstances, would be fatal to plaintiff. As attached to and incorporated in the complaint, CAHP's grievances failed to state any facts supporting their claim that CHP officers were required to work during their lunch periods. ■■■■■ Apparently for this reason, the petition for writ has attached to it (and incorporates by reference) the statement of the Executive Director of CAHP, who describes restrictions on CHP officers during their lunch periods.[4] The

---

[4]The statement purports to be a declaration under penalty of perjury, but the failure of the declarant to state the place or date of execution makes it defective for that purpose. (Code Civ. Proc., § 2015.5.) The statement provides in full:

"DECLARATION OF RALPH M. TORNATORE

"I, RALPH M. TORNATORE, declare:

"1. I am the Executive Manager of the CALIFORNIA ASSOCIATION OF HIGHWAY PATROL-MEN ('CAHP') and a former State Traffic Officer with the CALIFORNIA HIGHWAY PATROL ('CHP').

"2. The CAHP is the bargaining unit for State Traffic Officers.

"3. The CHP now has approximately 5661 uniformed members, ranging in rank from Commissioner to Traffic Officer. Approximately 99 percent of these officers are members of the CAHP.

"4. As employees of the CHP, Traffic Officers (hereinafter 'officers') are required to work an eight and one-half hour day (8½ hour day). During the eight and one-half (8½) hour

statement apparently contains crucial evidence never presented during the grievance process.

Without aid of the parties, we decline to address the problematical question whether, even in a proceeding for traditional mandate (Code Civ. Proc., §§ 1085, 1086), CAHP would be limited to a review of evidence submitted to the Department. Nor do we investigate whether the complaint might be amended to state a cause of action for breach of the MOU to which the Department was a signatory. As it turns out, judicial economy is better served by deciding the case on the merits than by resolving the myriad procedural problems not addressed by the parties.[5] Thus, for present purposes, we assume that if plaintiff could allege a violation of the MOU, the complaint could be amended to state some form of relief against the Department. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 942, p. 377.)

## II

*The MOU does not authorize overtime compensation for the officers' lunch periods in the pleaded circumstances.*

 CAHP first contends the decision of the California Supreme Court in *Madera Police Officers Assn. v. City of Madera, supra,* 36 Cal.3d 403

---

shift, officers are provided with a one-half (½) hour lunch.

"5. During the one-half (½) hour ('lunch hour'), State Traffic Officers are subject to several restrictive regulations on what they can or cannot do, including the following:

"a. Officers must be able to give a telephone number where they can be reached during lunch or remain in their patrol cars with the radio on if they choose to eat from a bag lunch;

"b. Officers cannot get out of uniform or utilize the thirty minutes to shop, exercise, or other similar activities, because they must be able to respond if called;

"c. Officers cannot go where they want for their lunch hour because they are literally 'on-call' during that time period;

"d. Officers are continually subjected to public questions and requests because of the appearance of being on-duty, since they must remain in uniform. If officers do not respond to public requests and seek the privacy which this period should warrant, they are subject to punitive action in the form of a disciplinary letter;

"e. Officers are required to carry their guns and badges throughout the lunch period;

"f. Officers are told by their superiors at what time during the shift they may use their lunch period, and accordingly, there is not consistency as to that time. As such, officers are unable to make plans as to their personal use of that time period; and

"g. Officers are unable to use the lunch hour as they see fit, particularly since they must remain cognizant of all restrictions imposed by their employer.

"6. I have personal knowledge of the facts stated herein and if called as a witness I could competently testify thereto.

"I declare under penalty of perjury that the foregoing is true and correct. Executed at _____, California, this ___ day of _____, 1985.

"s/RALPH M. TORNATORE"

[5] We trust that, should the parties feel the urge to engage in future litigation arising out of an MOU, they will give more thought to these issues.

compels the payment of overtime to CHP officers for their daily half-hour lunch period. However, this argument fails to appreciate that its officers' right to overtime must be located in the MOU. *Madera* is theoretically relevant to this dispute only insofar as it may bear upon the proper interpretation of the MOU, and, in this respect, we conclude *Madera* has no bearing at all.

The MOU entered into on July 1, 1984, is expressly authorized by SEERA. (§ 3517.5.) ■ The terms of the MOU are binding on the parties. (See *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 337-338 [124 Cal.Rptr. 513, 540 P.2d 609] [agreement under the Meyers-Milias-Brown Act (§ 3500, hereafter MMBA) binding on parties].) The interpretation of the MOU is governed by the same rules as are applicable to private contracts. (*Chula Vista Police Officers' Assn.* v. *Cole* (1980) 107 Cal.App.3d 242, 246 [165 Cal.Rptr. 598] [MOU under MMBA].)

■ "'Ordinarily, a written contract is sufficiently pleaded if it is set out in full or its terms alleged according to their legal effect. . . . But if the instrument is ambiguous, the pleader must allege the meaning he ascribes to it. [Citations.]'" (*Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749 [200 Cal.Rptr. 605], quoting 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 402, p. 2059.) Where a written contract is pleaded by attachment to and incorporation in a complaint and where the pleader fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain the complaint or petition for relief. (*Id.,* at pp. 749-750.) The rule on demurrer is simply a variation on the well-recognized theme that "'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.'" (*Id.,* at p. 750, fn. 4, quoting *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ Here, the MOU was attached to the complaint as an exhibit and incorporated by reference. CAHP failed to plead any ambiguity in the MOU. In this court, CAHP has expressly argued the MOU is unambiguous, so that extrinsic evidence is unnecessary to determine its meaning. We shall therefore "construe the language itself." (*Hillsman, supra,* 153 Cal.App.3d at p. 750.)

The MOU provides in pertinent part, "The hours of work, overtime rate, methods of compensation and policies pertaining to call-back overtime . . .

shall be governed by existing Departmental rules as specified in Personnel Transactions Manual, HPM 10.3, Chapter 24." Two provisions in chapter 24 are dispositive of CAHP's claims. The first is section 3.d.(3) which provides in relevant part, "Required work in excess of eight hours per day (or a normal eight-hour shift) or other ordered work on scheduled days off is compensable as overtime *if it consists of ordered overtime* of at least one-half hour at any one time." (Italics added; further references to § 3.d.(3) are to this section of the CHP Manual.)

CAHP argues section 3.d.(3) "provides for two types of overtime: (1) 'required work' in excess of eight hours per day or (2) 'ordered overtime.'" This construction would create a category of overtime that need not be "ordered overtime." However, the construction is not semantically reasonable. In our view, section 3.d.(3) authorizes overtime in two situations: (1) where an officer must work in excess of eight hours per day (or a normal eight-hour shift); and (2) where an officer must work on a scheduled day off. However, in *both* situations, the overtime must be "*ordered overtime.*" Put differently, "ordered overtime" is a necessary precondition of overtime compensation under the MOU.

The term "ordered overtime" was given a definitive construction in 1982 in *Fowler* v. *State Personnel Bd., supra,* 134 Cal.App.3d 964. In *Fowler,* a CHP officer sought compensation for his lunch period, alleging he was subject to restrictions nearly identical to those asserted by CAHP in the instant case.[6] However, the *Fowler* court concluded the officer's lunch period was not so restricted that it must be considered as time worked. (*Id.,* at

---

[6]The restrictions at issue in *Fowler* were: "'(a) Petitioner is required to be in uniform during the entire period. (CHP Manual, Sec. 73.5, Chapter 1.)

"'(b) Petitioner is required to wear his gun.

"'(c) Petitioner is required when travelling to do so conspicuously on public streets and when served in a restaurant to be served in portions of said restaurant in which the general public is served (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7).

"'(d) Petitioner is required to take his lunch period at times designated by his supervisor (CHP Manual 10.3, Sec. 23.1 and General Order 6.2, Sec. 2) or agreed to with fellow officers on the same beat who may not take their lunch period at the same time. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7.)

"'(e) Petitioner is required to render assistance to members of the public in the following ways:

"'(1) Petitioner is subject to being called out by his dispatcher at any time during the lunch period (CHP Manual 73.5, Sections 1.1.3, .1.1.4).

"'(2) Petitioner may not eat at his residence unless his beat assignment adjoins the community in which he resides. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7.)

"'(3) Petitioner may not take his lunch at a restaurant that is more than five minutes in response time to his beat assignment. (San Luis Obispo Standard Operating Procedures, Sec. 1.1.7.)

"'(f) Petitioner may not eat his lunch in restaurants which have eating areas combined with bars or cocktail lounges.'" (*Fowler* v. *State Personnel Bd., supra,* 134 Cal.App.3d at pp. 967-968.)

p. 970.) "Respondent during his lunch period is free with certain restrictions to eat in the restaurant of his choice, in his car, or at the station." (*Ibid.*)

The dispute in *Fowler* preceded the consummation of the instant MOU under SEERA; the officer's terms and conditions of employment were then governed by statutes and departmental regulations. *Fowler* construed two of these. First, the court held that section 23.1 of the CHP Manual, which expressly denied compensation for "time granted for lunch," was a valid rule. (*Fowler, supra*, 134 Cal.App.3d at p. 970.) Second, the court concluded the officer's lunch period could not be deemed "ordered overtime" or a time of "critical emergency" as provided by section 19844, subdivision (a).[7] (*Id.*, at pp. 970, 972.)

CAHP correctly points out that section 23.1 of the CHP Manual was not incorporated in the MOU and therefore cannot affect the instant dispute.[8] However, the same cannot be said of the "ordered overtime" provision of section 19844; we conclude it was, indeed, incorporated in the MOU. Subdivision (a) of that statute provides overtime is to be compensated where it is ordered or where there is a critical emergency. (See fn. 7, *ante.*) Subdivision (b) of the statute provides: "If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if such provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act." Section 19844 thus facially tenders the question whether the statute or an MOU will govern compensation for overtime.

---

[7]Section 19844 provides: "(a) The department shall provide the extent to which, and establish the method by which, ordered overtime or overtime in times of critical emergency is compensated. The department may provide for cash compensation at a rate not to exceed 1½ times the regular rate of pay, and the rate may vary within a class depending upon the conditions of work, or the department may provide for compensating time off at a rate not to exceed 14 hours of time off for each hour of overtime worked. The provisions made under this section shall be based on the practices of private industry and other public employment, the needs of state service, and internal relationships.

"(b) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if such provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

[8]In its petition for writ of mandate, CAHP pleaded that section 23.1 of the CHP Manual controlled the question whether the officers were working on their lunch periods. CAHP took the same position in its opening brief in this court. Our original opinion assumed section 23.1 of the manual was binding on the parties. In its petition for rehearing, CAHP for the first time contended section 23.1 was not binding on the parties because it had not been incorporated in and was therefore not a part of the MOU. We discovered CAHP's claim, although tardily advanced, was factually correct. We therefore granted a rehearing.

Section 3.d.(3), incorporated in the MOU, makes only "ordered overtime" compensable. It must be seen as a necessary response to the question posed by section 19844. Section 3.d.(3) specifies that the "ordered overtime" condition of subdivision (a) of section 19844 will continue in effect without conflict with the MOU. The term "ordered overtime" therefore has the same meaning in the MOU as in the statute. CAHP has made no contention to the contrary.

As we shall explain, it ultimately follows that the term "ordered overtime" in the MOU is subject to *Fowler*'s interpretative gloss. ■ Ordinarily all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated. (*City of Torrance* v. *Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 378 [185 Cal.Rptr. 645, 650 P.2d 1162].) The rule is derived from the premise that, "The parties are presumed to have had existing law in mind when they executed their agreement . . . ." (*Swenson* v. *File* (1970) 3 Cal.3d 389, 394 [90 Cal.Rptr. 580, 475 P.2d 852].) "Existing law" includes decisions of the appellate courts interpreting statutes. (*Kilfoy* v. *Fritz* (1954) 125 Cal.App.2d 291, 294 [270 P.2d 579]; *Blair* v. *Williams* (1927) 86 Cal.App. 676, 681 [261 P. 539].) ■ Since *Fowler* interpreted the term "ordered overtime" in section 19844 and since the term has the same meaning in the MOU, the MOU is subject to *Fowler*'s interpretation. The restrictions on the officer's lunch period in *Fowler* and the restrictions alleged here are without material difference. (Compare fns. 4 and 6, *ante*.) Therefore, under *Fowler*, the officers are not engaged in "ordered overtime" in the circumstances pleaded here. Consequently, they are not entitled to overtime compensation. (*Fowler* v. *State Personnel Bd.*, *supra*, 134 Cal.App.3d at p. 972.)

The subsequent decision of the California Supreme Court in *Madera Police Officers Assn.* v. *City of Madera*, *supra*, 36 Cal.3d 403 has no bearing on this dispute. In this case, we have no occasion to examine the effect of *Madera* upon *Fowler* except to note that nothing in *Madera* treats *Fowler*'s interpretation of section 19844 as unlawful or against public policy. (See *Madera*, *supra*, 36 Cal.3d at p. 413.) ■■ Whether *Madera* may change *Fowler* is immaterial since even assuming for purposes of argument it does, "'A subsequent decision of a higher court, in a different case, giving a different exposition to a point of law from the one declared and known, when a settlement between parties takes place, cannot have a retrospective effect and overturn such settlement.'" (*Cooley* v. *County of Calaveras* (1898) 121 Cal. 482, 486 [53 P. 1075], quoting *Lyon* v. *Richmond,*

2 Johns. Ch. 51.) "'The community would be in a miserable condition if at every change of opinion upon questions of law all their previous contracts and settlements were to be overturned.'" (*Id.*, at p. 486, quoting *Bank of United States* v. *Daniel* (Ky.Sup.Ct.) 12 Pet. 32.) If the parties to a contract wish subsequent law to apply, they must expressly so agree. (See *City of Torrance* v. *Workers' Comp. Appeals Bd., supra,* 32 Cal.3d at p. 379; *Swenson* v. *File, supra,* 3 Cal.3d at p. 393.) The parties did not do so here. Indeed, the MOU provides it constitutes the entire agreement between the parties and may be amended only by mutual agreement. We conclude *Fowler* controls the interpretation of the MOU and precludes overtime compensation for the officers' lunch period.

Another provision of the MOU reinforces our conclusion. Section 5.b.(2)(a) of chapter 24 of the CHP Manual provides: "(a) Overtime shall normally be restricted to emergency situations which relate to enforcement activities and contribute toward increasing the number of work hours available for road patrol and other law enforcement duties or when authorized by the Commissioner." In contravention of this paragraph, CAHP would have overtime compensation accrue routinely for the officers' lunch periods, which are not emergency situations.

We conclude the MOU does not authorize overtime compensation for CHP officers for their lunch periods in the circumstances pleaded. As we had occasion to state recently in another context, CAHP's "redress is through [collective bargaining under] SEERA." (*Sullivan* v. *State Bd. of Control* (1985) 176 Cal.App.3d 1059, 1063 [225 Cal.Rptr. 454].)

### III

*The FLSA does not require overtime compensation for the officers' lunch periods.*

▮ Finally, CAHP asserts the FLSA requires that CHP traffic officers be paid overtime for their lunch period. We must disagree.

The overtime provisions of the FLSA apply to CHP traffic officers. (29 U.S.C. § 203(e)(2)(C); *Garcia* v. *San Antonio Metro., supra,* 469 U.S. at p. 556 [83 L.Ed.2d at p. 1037].) ▮ A collective bargaining agreement, such as the MOU, cannot shield an employer from paying overtime if the FLSA requires it. (See *Tennessee Coal Co.* v. *Muscoda Local* (1944) 321 U.S. 590 [88 L.Ed. 949, 959, 64 S.Ct. 698].)

▮ Section 7(a) of the Act (29 U.S.C. § 207(a)) ordinarily requires that premium overtime wages be paid after 40 hours in a workweek. However,

section 7(k) of the Act (29 U.S.C. § 207(k)) sets forth a partial overtime exemption for fire protection and law enforcement agencies. Effective January 1, 1978, no public agency is deemed to have violated the normal 40-hour overtime standard of the Act with respect to the employment of any employee in law enforcement activities if the hours worked by the employee do not exceed 171 hours in work periods of 28 consecutive days (or a correspondingly lesser number of hours for a shorter work period). (See 48 Fed.Reg. 40518 (Sept. 8, 1983).)[9]

Section 553.15 of title 29 of the Code of Federal Regulations provides in relevant part: "(a) Where the employer has elected to use the section 7(k) exemption, sleep and mealtime cannot be excluded from compensable hours of work where (1) the employee is on duty for less than 24 hours. . . ." We shall assume for purposes of argument this regulation requires that the officers' lunch period must be included in determining compensable hours of work under section 7(k) of the Act. Nonetheless, the officers are still not entitled to overtime compensation. The Department points out that assuming each traffic officer works 8.5 hours per day (a figure including lunch period) and 42.5 hours per week, in a 28-day period (4 weeks) the officers have worked 170 hours. Accordingly, no overtime compensation is due the officers under the FLSA. (29 U.S.C. § 207(k).)

Since we conclude CAHP failed to plead facts sufficient to state a cause of action, the trial court properly sustained defendant's demurrer without leave to amend and denied the petition for the writ.

---

[9]Section 7(k) of the FLSA (29 U.S.C. § 207(k)) provides as follows: "(k) No public agency shall be deemed to have violated subsection (a) with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—[¶] (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or [¶] (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed."

The study of the Department of Labor pursuant to section 7(k)(1)(B) of the FLSA (29 U.S.C. § 207(k)(1)) determined that for employees engaged in law enforcement activities, the average number of hours in tours of duty in work periods of 28 consecutive days was 171 hours. Consequently, the partial overtime exemption for these employees is 171 hours in a work period of 28 consecutive days. (See 48 Fed.Reg. 40518 (Sept. 8, 1983).)

## DISPOSITION

The judgment is affirmed.

Evans, Acting P. J., and Sparks, J., concurred.

Petitions for a rehearing were denied October 7, 1986, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied December 4, 1986. Bird, C. J., was of the opinion that the petition should be granted.