Filed 5/19/23  Lazaro v. Yadav Enterprises CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARTHA VALENCIA LAZARO et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>YADAV ENTERPRISES, INC. et al.,<br><br>     Defendants and Appellants. | A165823<br><br>(Monterey County Super. Ct. No. 15CV000143) |

Plaintiffs Silvia Contreras and Martha Valencia Lazaro sued their former employers, Yadav Enterprises, Inc. (fka JIB Management, Inc.), Central Coast Restaurants, Inc., and Bridget Hernandez (collectively, defendants) under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.), seeking civil penalties for alleged violations of the Labor Code, including unpaid wages.  Amidst a growing fracture in the Courts of Appeal over whether unpaid wages constituted a civil penalty that could be recovered under Labor Code section 558 in a PAGA action, the parties reached a settlement of the entire case and, for more than a year, sought court approval of the settlement as required by the Labor Code.  In June 2019, the trial court signed an order which—in approving the settlement and entering judgment thereon—expressed the contemplation of the parties and the court that the judgment was "intended to be a final disposition of the Lawsuit in its entirety."

A few months later, the California Supreme Court held that unpaid wages sought under Labor Code section 558 are not civil penalties recoverable under PAGA. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 197 (*ZB*).) The trial court subsequently denied defendants' motion to vacate or set aside the judgment. On appeal from this post-judgment order, defendants contend that *ZB* must be applied retroactively to this case and that the trial court abused its discretion in denying relief under various statutory provisions. We conclude otherwise and affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Proceedings up to settlement and judgment

Plaintiffs are former employees of defendants' Jack in the Box restaurant, and their complaint alleged a single cause of action under PAGA seeking penalties for defendants' unlawful wage and hour practices, including their failures to pay minimum wage, to pay for overtime, to provide breaks and meal periods, to provide accurate itemized wage statements, and to maintain accurate timekeeping records. Plaintiffs sought unpaid wages pursuant to Labor Code section 558 on behalf of themselves and other aggrieved employees, alleging they were bringing the action "on behalf of the State of California pursuant to PAGA and not for [their] own individual causes of action."

In 2017, defendants filed motions contending that plaintiffs' claims for unpaid wages were not recoverable in a PAGA action and were subject to arbitration despite the holding in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 that an employment agreement

_____

[1] The California Supreme Court transferred this matter from the Court of Appeal for the Sixth Appellate District to the First Appellate District on August 9, 2022.

purporting to compel the waiver of representative claims under PAGA is unenforceable as a matter of state law. (*Iskanian*, at p. 384.) Specifically, in seeking to bifurcate plaintiffs' claims for civil penalties from their claims for unpaid wages and to compel arbitration of the latter, defendants cited the then-recent decision by the Fifth District Court of Appeal in *Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228 (*Esparza*), for the proposition that *Iskanian*'s rule barring arbitration of PAGA claims applied only to "PAGA representative claims for *civil penalties*," which excluded claims for unpaid wages. Plaintiffs countered with *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112 (*Thurman*), wherein a division of the Fourth District Court of Appeal held that Labor Code section 558's provision for civil penalties included unpaid wages that would ultimately be paid entirely to the affected employee. (*Thurman*, at p. 1145.)

After the trial court denied defendants' motion to bifurcate but before it ruled on their motion to compel arbitration, defendant Central Coast Restaurants made an offer pursuant to Code of Civil Procedure section 998[2] to settle all of plaintiffs' "claims for penalties, individual wages payable directly to aggrieved employees, damages, interest, attorneys' fees and costs" for $400,000 "in exchange for a judgment of dismissal of the Complaint against all parties with prejudice." (Fn. omitted.) Plaintiffs accepted the offer in November 2017.

In December 2017, the same appellate division that authored *Thurman* issued *Lawson v. ZB, N.A.* (2017) 18 Cal.App.5th 705, which disagreed with *Esparza.* Then, in March 2018, before the parties began to seek the trial

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

court's approval of the settlement as required by Labor Code section 2699, subdivision (l)(2), the California Supreme Court granted review in *Lawson*.

Thereafter, for more than a year, plaintiffs and all defendants made joint efforts to obtain court approval of the settlement. Although the parties were unified in seeking approval of the settlement, a dispute arose whether the settlement would preclude individual claims for wages by nonparty employees. Defendants repeatedly urged the court not to decide the issue, indicating such a ruling would be an unlawful "advisory ruling." Instead, defendants urged the court to apply "class settlement procedures" to nonparty employees because of the possibility the judgment could bind absent employees as to the unpaid wages claim. (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 987 (*Arias*).)

On June 5, 2019, the trial court approved the parties' settlement in the amount of $400,000, signing a proposed order drafted by defendants. The order allocated the settlement as follows: $38,636.25 to the Labor Workforce and Development Agency; $133,333 and $38,107.96 to plaintiffs' counsel for attorney fees and litigation costs, respectively; $5,000 to each plaintiff for their service as PAGA representatives; $7,500 to a consulting company for calculation of the aggrieved employees' shares and administration of payment of the penalties; and $167,423.75 "designated primarily as penalties and to recover underpaid wages as penalties pursuant to Labor Code section 558." The order indicated the amount set aside for penalties and unpaid wages would be allocated to aggrieved employees pursuant to Labor Code section 558, subdivision (a)(3), and *Thurman*. The order entered judgment and stated: "This Order and Judgment is intended to be a final disposition of the Lawsuit in its entirety." The order further indicated: "*Without affecting the finality of this Order or the Judgment entered thereon*, the Court retains

4

jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of the Order and Settlement Agreement pursuant to Cal Civ. Proc. Code § 664.6." (Italics added.)

## B. Defendants' motion to vacate or set aside the judgment

On September 12, 2019, the California Supreme Court issued its decision in *ZB*, holding that "the civil penalties a plaintiff may seek under section 558 through the PAGA do not include the 'amount sufficient to recover underpaid wages.' " (*ZB*, *supra*, 8 Cal.5th at p. 182.) *ZB* disapproved of *Thurman* and other cases to the extent they were inconsistent with its holding. (*ZB*, at p. 196, fn. 8.)

A week later, defendants filed a notice of intent to vacate or set aside the June 5, 2019 judgment. Defendants indicated they would move to do so pursuant to section 663 on the grounds that the judgment (1) did not reflect the terms of the section 998 offer and (2) failed to afford due process rights to unnamed parties affected by the judgment. Alternatively, defendants indicated they would move for relief pursuant to section 473, subdivision (d) ("473(d)") on the ground the judgment was void, or section 473, subdivision (b) ("473(b)") on the ground of mistake or surprise.

Before defendants filed their motion, plaintiffs filed a declaration from their counsel concerning defendants' efforts to proceed with distribution of the settlement. Plaintiffs' counsel explained they were involved in an unrelated case against defendant Central Coast Restaurant, i.e., a class action for wage claims with no cause of action under PAGA. This other case was filed by a plaintiff named Jennifer Garcia in Alameda County then removed to federal court. Central Coast Restaurant had moved for summary judgment in the federal court, arguing the order approving the settlement in the instant PAGA state case barred the federal action under res judicata

5

principles. On September 23, 2019, the federal district court denied the summary judgment motion, ruling that res judicata did not preclude the class action insofar as the plaintiff in the class action "neither asserts the same primary right nor was she adequately represented by the *Contreras* [*Lazaro*] plaintiffs."[3]

On September 27, 2019, defendants filed another notice of motion to vacate or set aside the judgment and also a memorandum in support. Relying on section 473(d), defendants argued the judgment was void because, contrary to the agreed terms of the section 998 offer, "in approving the settlement, the Court characterized the settlement as one involving penalties, with unpaid wages among those penalties." Defendants also argued the settlement resolved unnamed employees' claims for damages without affording them due process. Moreover, relying on *ZB*, defendants invoked section 663, arguing the order approving the settlement and the judgment rested on an erroneous legal basis that unpaid wages constituted penalties that could be recovered under Labor Code section 558 in a PAGA only action. Last, relying on section 473(b), defendants claimed the court should set aside the judgment because they were surprised by the holding in *ZB* and had mistakenly believed—based on *Thurman* and *Esparza*—that they could make an offer that included all of the relief sought by plaintiffs.

---

3    Pursuant to Evidence Code section 452, subdivision (d), defendants request judicial notice of various court documents in the federal class action matter, i.e., the complaint, docket, and orders denying defendants' motions for summary and to compel arbitration. We deny the request. Defendants acknowledge the trial court did not judicially notice any of these documents, and defendants fail to demonstrate the relevance of these documents such that judicial notice is warranted. (*People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6.) Nonetheless, as can be seen in this factual summation, some information about this class action and the federal court order denying summary judgment already appears in the appellate record.

The trial court denied defendants' motion on July 1, 2020. As relevant here, the court rejected defendants' argument that the judgment should be set aside because "it was entered on an incorrect or erroneous legal basis" in light of *ZB*'s subsequent holding that unpaid wages under Labor Code section 558 are individual damages not penalties. Relying on *Campbell v. Rainey* (1932) 127 Cal.App. 747 (*Campbell*), the court reasoned that *Thurman*, *supra*, 203 Cal.App.4th 1112, was good law at the time the parties settled the case, and the fact that *ZB* later overruled *Thurman* did not "change the fact this was valid authority at the time of the settlement."

Defendants appealed.

## DISCUSSION

### A. Judicial Retroactivity and Settlement Agreements

Relying on the general rule regarding the retroactivity of judicial decisions, defendants contend the decision in *ZB* must apply retroactively in this case. For the reasons below, we cannot agree.

We acknowledge the general rule that decisions of the California Supreme Court resolving conflicts amongst the lower courts operate retroactively. (*Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 36–37.) But this case involves a judgment entered pursuant to a *settlement agreement* under section 998. "A judgment entered pursuant to a section 998 settlement is a 'stipulated or consent judgment [which], being regarded as a contract between the parties, must be construed as any other contract.' " (*Milicevich v. Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1004, fn. 9.)

Accordingly, the more precise question in this case is whether the parties' settlement agreement can be undone by *ZB*. It has long been settled that the answer to this question is no.

Over a century ago, the California Supreme Court addressed this very

7

issue in *Cooley v. County of Calaveras* (1898) 121 Cal. 482 (*Cooley*). In *Cooley*, the plaintiff, a justice of the peace, presented a claim to the defendant county for $465 as payment for 155 criminal actions that he tried or examined. (*Cooley*, at pp. 483–484.) At the time he presented his claim, an 1895 statute prescribed $3 as payment for each criminal action tried or examined. (*Id.* at p. 484.) The county paid the claim, and that payment constituted " 'a complete settlement between plaintiff and defendant county.' " (*Ibid.*) Sometime later, the Supreme Court issued a decision holding the 1895 statute unconstitutional, which left standing an 1893 statute that provided a $7 payment for each criminal action tried or examined. (*Id.* at pp. 484–485.) The plaintiff then sought recovery of the additional amount authorized under the 1893 statute, and the county board of supervisors rejected the claim. (*Id.* at p. 484.) The Supreme Court held he could not recover the difference, reasoning "[t]here was no mistake as to the fees plaintiff should receive when his services were rendered. The statute of 1895 fixed their amount and plaintiff settled upon that basis, and *no subsequent decision of a court can create a mistake and annul a previous contract which was legal and valid when made*." (*Id.* at p. 485, italics added.) In the Supreme Court's words, "[t]he understanding of the law prevailing at the time of the settlement of a contract, although erroneous, will govern, and the subsequent settlement of a question of law by judicial decision does not create such a mistake of law as courts will rectify." (*Id.* at pp. 486–487.)

In *Campbell, supra,* 127 Cal.App. 747, a plaintiff stockholder of a bank paid the defendant Superintendent of Banks part of an assessment that the defendant had levied against the bank's stockholders after the bank became insolvent. (*Campbell*, at p. 748.) After the California Supreme Court invalidated the statute on which the defendant relied to levy the assessment,

8

the plaintiff filed an action to recover the amount that he previously paid. (*Ibid.*)  The defendant appealed from the judgment permitting recovery, and the Court of Appeal reversed.  (*Id.* at pp. 748, 753.)  Citing *Cooley*, the court rejected the plaintiff's contention that "a mutual mistake of law establishes a sufficient basis for recovery."  (*Id.* at p. 750.)

In *Bank of America v. Department of Mental Hygiene* (1966) 246 Cal.App.2d 578 (*Bank of America*), the Department of Mental Hygiene instituted a superior court action against a father to recover money for the care of his daughter pursuant to Welfare and Institutions Code section 6650, which imposed "liability for the care and support of a mentally ill person on certain of his relatives."  (*Bank of America*, at pp. 580, 587.)  The parties settled that action, and the executor of the father's will paid the settlement amount in December 1963.  (*Id.* at p. 581.)  Later, in *Department of Mental Hygiene v. Kirchner* (1964) 60 Cal.2d 716, the California Supreme Court held Welfare and Institutions Code section 6650 unconstitutional, and the executor filed suit in October 1965 to recover the money paid in the settlement.  The trial court sustained a general demurrer to the executor's complaint without leave to amend and entered judgment in favor of the defendant.  (*Bank of America*, at pp. 580–581.)  The Court of Appeal affirmed. (*Id.* at p. 589.)  Citing cases such as *Cooley* and *Campbell*, the Court of Appeal concluded the executor had no cause of action.  (*Bank of America*, at pp. 585–587.)

In *Cal. Ass'n of Highway Patrolmen v. Dep't of Pers. Admin.* (1986) 185 Cal.App.3d 352 (*Highway Patrolmen*), plaintiff California Association of Highway Patrolmen (CAHP) and the State of California entered into a written memorandum of understanding (MOU) that, in short, provided " 'ordered overtime' is a necessary precondition of overtime compensation."

9

(*Highway Patrolmen*, at pp. 356–357, 361–362.)  The MOU was negotiated at a time when *Fowler v. State Personnel Bd.* (1982) 134 Cal.App.3d 964 established that "a CHP officer was not entitled to overtime compensation for his lunch period, even though he was subject to numerous restrictions on his freedom during his lunch period." (*Highway Patrolmen*, at pp. 356–357.)  In July 1984, about a week after execution of the MOU, the California Supreme Court rendered a decision holding that a city's rules and regulations mandated overtime pay to police officers for their mealtimes because of numerous restrictions on the officers' freedom during these times.  (*Highway Patrolmen*, at p. 357, citing *Madera Police Officers Assn. v. City of Madera* (1984) 36 Cal.3d 403 (*Madera*).)  In May 1985, CAHP filed a petition for mandamus to compel the respondent, California Department of Personnel Administration, "to set aside its decision denying overtime compensation to officers employed by the California Highway Patrol (CHP) for the one-half hour lunch period of each working shift." (*Highway Patrolmen*, at pp. 356, 358.)  The court sustained the defendant's demurrer without leave to amend, and the Court of Appeal affirmed.  (*Id.* at pp. 358, 367.)

As relevant here, the Court of Appeal rejected CAHP's argument that *Madera* compelled payment of overtime, stating the right to overtime "must be located in the MOU." (*Highway Patrolmen, supra*, 185 Cal.App.3d at pp. 360–361.)  The court noted that " 'ordered overtime' is a necessary precondition of overtime compensation under the MOU" and "the term 'ordered overtime' was given a definitive construction" in *Fowler*.  (*Highway Patrolman*, at p. 362.)  The court held that the MOU's use of the term " 'ordered overtime' " would still be interpreted according to *Fowler* and that *Madera* had "no bearing" on the dispute.  Though the court did not examine the effect of *Madera* upon *Fowler*, it reasoned that any effect was immaterial

10

in light of the *Cooley* decision. As part of its analysis, the *Highway Patrolmen* court noted *Cooley*'s assessment that " ' "[t]he community would be in a miserable condition if at every change of opinion upon questions of law all their previous contracts and settlements were to be overturned." ' " (*Highway Patrolmen*, at pp. 364–365, quoting *Cooley*, *supra*, 121 Cal. at p. 486; see also *Estate of Propst* (1990) 50 Cal.3d 448, 462 (*Propst*) [a decision announcing a change in a judicial rule of law will not be "applied to impair contracts made or property rights acquired in accordance with the prior rule"].)

The California Supreme Court has explained that general contract law principles should apply to section 998 offers and acceptances only where such principles neither conflict with nor defeat the statutory purpose to encourage the settlement of lawsuits prior to trial. (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280.) Defendants, however, offer no legal or logical reason why contract principles should not apply in the instant situation. As a practical matter, general application of the *Cooley* rule in the context of section 998 settlements would encourage such settlements by ensuring a measure of certainty in their enforcement. Conversely, allowing judicial decisions to retroactively undo settlement agreements—especially those that are executed with awareness that the relevant law is open to question— seems unfair and unwise given that the unsettled nature of the law is typically a circumstance that figures into the calculation of whether to settle and for how much. (See 1 California Trial Handbook § 13:03 [one consideration when evaluating whether to settle is the strength of the legal theories supporting and opposing the claim]; 5 Successful Partnering Between Inside and Outside Counsel, Partnering strategies in settlement § 65:5 [discussing considerations in settling a test case where the law is

11

unsettled].)[4]

We turn to address defendants' contention that *ZB* must be applied retroactively because, in their view, no final judgment had been entered when *ZB* became final. We see no basis for relief.

Case law establishes that "a party cannot appeal from a judgment to which the party has stipulated as part of a settlement." (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 400 [a party may not appeal "a judgment entered by a court under the authority of, and in accordance with, the contractual agreement of the parties [citation], intended to settle their dispute fully and finally"]; *Mecham v. McKay* (1869) 37 Cal. 154, 158 ["we will not review, on appeal, judgments and orders entered by consent"].)

Defendants, however, contend the June 5, 2019 judgment was not "final" until the time for making a direct attack on that judgment had passed. (See Code Civ. Proc., § 1049.) Relying on *Department of Finance v. Commission on State Mandates* (2022) 85 Cal.App.5th 535 (*Department of Finance*), defendants contend that, notwithstanding the express contemplation of the parties and the trial court that the June 5, 2019 judgment was "intended to be a final disposition of the Lawsuit in its entirety," the judgment was not final because defendants timely moved to set

---

[4]     In urging the trial court to not decide whether the settlement would preclude individual claims for wages by nonparty employees and to instead apply class settlement procedures, defendants were clearly aware of *Arias*, *supra*, 46 Cal.4th 969, which explained that nonparty employees could assert collateral estoppel if an employee plaintiff obtained a favorable judgment, but the nonparty employees would not be bound by an unfavorable judgment to an employee plaintiff unless the nonparty employees were given notice of the PAGA action and an opportunity to be heard. (*Arias*, at p. 987.) With *ZB* pending in the California Supreme Court, it appears reasonably apparent that this issue figured into defendants' settlement strategy.

aside or vacate that judgment under sections 473 and 663. As relevant here, *Department of Finance* held that to be "immune from retroactive or clarifying legislation, [the decision of the Commission on State Mandates] must be free from direct attack by a petition for writ of administrative mandate either because a judgment resolving such a petition has become final and conclusive or because a petition was not timely filed." (*Department of Finance*, at p. 572.) Notably, however, that case did not involve retroactive application of a judicial decision to a judgment based on a stipulated settlement, nor did it discuss the meaning of "final" in such a situation. (*Id.* at pp. 552–553, 570–572.)

In any event, even if we assume arguendo that a judicial decision could be applied retroactively to a judgment where a party makes a timely motion under section 473 or section 663, this still leaves us with the rule set out in *Cooley* and its progeny. As discussed, that rule supports the trial court's decision not to apply *ZB* retroactively so as to undo the parties' agreed settlement of this case.

Indeed, defendants do not argue that *Cooley* and its progeny are no longer good law, and they offer no case law supporting a different outcome in circumstances similar to those here. Like *Department of Finance*, *supra*, 85 Cal.App.5th 535, none of their other authorities applies the general rule of decisional retroactivity to undo either a stipulated settlement or a judgment entered thereon where, as here, the terms of the settlement were lawful when approved. (E.g., *Vazquez v. Jan-Pro Franchising Internat., Inc.* (2021) 10 Cal.5th 944, 948–954; *Penn v. Prestige Stations, Inc.* (2000) 83 Cal.App.4th 336, 339–344; *In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 836–837.)

With regard to *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, the

13

Court of Appeal reversed a judgment and remanded for further proceedings in a PAGA case after finding that the trial court abused its discretion in approving a settlement that disproportionately allocated civil penalties between two classes of aggrieved employees without apparent justification. (*Moniz*, at pp. 87—89.) But *Moniz* focused on procedural challenges to the appeal (*id.* at pp. 70–73) and various challenges to the approved settlement (*id.* at pp. 73–89); decisional retroactivity was not at issue.

As for *Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700, the court there did undo a settlement where the appellant had declined to authorize the settlement. (*Johnson*, at pp. 1703–1710.) Unauthorized settlements, however, are subject to considerations different than those where there is no question concerning authority to settle, as is the case here. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 260 [where attorney's clerical mistake resulted in a settlement not authorized by the client, "the public policy favoring settlements has no force"].)

Finally, defendants contend the rule in *ZB* should apply in this case because the decision did not "create or alter the law" but "declared what the law had always been." (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 979.) Though that concept has been criticized as a " 'myth' " (*ibid*.), we note it simply reflects the general rule of retroactivity; it offers no shield against application of the *Cooley* exception to that general rule.

## B. Sections 473(b) and 663

Defendants further contend the trial court should have vacated the section 998 settlement and judgment pursuant to section 473(b) because they were based on the mistaken belief that unpaid wages were recoverable in a PAGA-only action, and defendants were surprised by *ZB's* holding to the contrary. Similarly, defendants cite section 663 and argue the settlement

14

was based on the erroneous legal conclusion that the PAGA settlement could encompass unpaid wages as penalties, which the California Supreme Court later rejected in *ZB*. These contentions fail to persuade.

Under section 473(b), the trial court has the discretion "on a showing of 'mistake, inadvertence, surprise or excusable neglect' to grant relief from a judgment, dismissal or other order based on its evaluation of the nature of the mistake or error alleged and the justification proffered for the conduct that occurred." (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 928 (*Austin*).) "A motion to vacate under section 473(b) ' " 'is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal.' " [Citation.] The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*Id.* at p. 929.)

Section 663 provides in pertinent part: "A judgment or decree, when based upon a decision by the court . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected." The trial court's decision to deny a motion to set aside the judgment is reviewed under the deferential abuse of discretion standard. (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 524.)

As a preliminary matter, we reject defendants' contention that the trial

court abused its discretion by failing to rule on their request for relief under section 473(b). Because defendants cite nothing in the record indicating the trial court refused to consider their argument under section 473(b), we presume the court considered and denied it. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; cf. *Austin*, *supra*, 244 Cal.App.4th at pp. 926–932 [trial court abused its discretion by *explicitly* declining to consider a plaintiff's section 473(b) motion].)

On the merits, we cannot conclude the trial court abused its discretion under either section 473(b) or section 663. Even assuming the June 5, 2019 judgment was not final, as discussed, the court correctly reasoned that " '[t]he understanding of the law prevailing at the time of the settlement of a contract, although erroneous, will govern, and the subsequent settlement of a question of law by judicial decision *does not create such a mistake of law as courts will rectify.*' " (Quoting *Campbell*, *supra*, 127 Cal.App. at p. 750, italics added.) Moreover, the record indisputably reflects that the parties settled with full awareness of the decisional split amongst the Courts of Appeal with regard to whether unpaid wages constituted a "civil penalty" under Labor Code section 558. On this record, no abuse of discretion appears.

Finally, defendants contend the trial court's failure to vacate the settlement under section 473(b) is "both unjust and contrary to public policy" because the plaintiff in the pending federal class action against defendant Central Coast Restaurants is seeking unpaid wages on behalf of aggrieved employees. As such, defendants claim they might be subjected to possible "double recovery" of unpaid wages because of the federal class action pending against them. Because this argument was not raised below and is unaccompanied by citation to legal authority on point, we decline to address it here. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 (*Aaron B.*).)

16

## C. Section 473(d)

Relying on section 473(d), defendants next argue the trial court should have set aside the judgment as void because the judgment included relief that was contrary to law, i.e., an award of unpaid wages in contravention of *ZB*. Defendants argue the entire judgment is void and no part of it can be saved by excision. We disagree.

"A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. . . . Lack of jurisdiction in this 'fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] [¶] In a broader sense, lack of jurisdiction also exists when a court grants 'relief which [it] has no power to grant.' [Citations.] Where, for instance, the court has no power to act 'except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites,' the court acts without jurisdiction in this broader sense." (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691.)

" 'When a court has fundamental jurisdiction [over the subject matter and the parties], but acts in excess of its jurisdiction, its act or judgment is merely voidable.' [Citation.] A 'voidable' judgment is one that is valid until it is set aside as void." (*Grados v. Shiau* (2021) 63 Cal.App.5th 1042, 1050.) "The validity of the judgment is to be determined from the law in force when it is rendered and if valid then subsequent changes in the law cannot affect it." (*Lake v. Bonynge* (1911) 161 Cal. 120, 133; cf. *Memphis & L. R. R. Co. v. Railroad Comm'rs* (1884) 112 U.S. 609, 623 ["It is, of course, the law in force at the time the transaction is consummated and made effectual, that must be looked to as determining its validity and effect"].)

As recounted above, the award of unpaid wages was lawful at the time

17

of the settlement and the judgment entered thereon; consequently, the judgment is neither void nor voidable. Defendants' reliance on *311 South Spring Street Co. v. Department of General Services* (2009) 178 Cal.App.4th 1009 is misplaced. Unlike the situation here, the judgment rendered in *311 South Spring Street Co.* was contrary to law at the time the judgment was entered. (*Id.* at pp. 1012–1013 & fn. 1, 1015.)

Defendants also argue the judgment is void because the trial court acted in excess of its jurisdiction when it approved the settlement despite plaintiffs' failure to comply with the following italicized portion of Labor Code section 2699, subdivision (l): "(2) The superior court shall review and approve any settlement of any civil action filed pursuant to this part. *The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court.*" (Italics added.)

But defendants never raised this point below, and they present no developed argument or authority on appeal why this procedure should be considered jurisdictional. (*Aaron B.*, *supra*, 46 Cal.App.4th at p. 846.) Accordingly, we decline to consider the point for the first time here.[5]

Finally, defendants suggest in their opening brief—but do not clearly argue—that the settlement was not apportioned properly. Later, in their reply brief, they repeatedly suggest the settlement was not apportioned properly under Labor Code section 2699, subdivision (i). We do not address this issue because it was neither preserved nor properly raised on appeal. Defendants' motion to vacate or set aside the judgment did not directly challenge the settlement or judgment on the ground it was improperly

---

[5] Having found defendants' forfeiture of the issue, we deny their request for judicial notice of "public search results for a PAGA Notice on the Department of Industrial Relations (a California agency) website," which defendants allege are relevant to this issue.

apportioned.

In sum, we reject defendants' claims of error.

## DISPOSITION

The order of the trial court is affirmed.  Plaintiffs are awarded costs on appeal.  (Cal. Rules of Court, rule 8.278.)

FUJISAKI, J.

WE CONCUR:

TUCHER, P.J.

PETROU, J.

*Lazaro v. Yadav Enterprises, Inc.* (A165823)